UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN HARRIS,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:13-cv-45

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. On April 5, 2013, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #10).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 22 years of age on his alleged disability onset date. (Tr. 150). He successfully completed high school, but has no past relevant work experience. (Tr. 21). Plaintiff applied for benefits on March 12, 2009, alleging that he had been disabled since January 1, 1986, due to mood and affective disorder, depression, anxiety, and learning impairments. (Tr. 150-52, 178). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 61-149). On May 5, 2011, Plaintiff appeared before ALJ William Reamon, with testimony being offered by Plaintiff and vocational expert, John Petrovich. (Tr. 28-60). In a written decision dated July 14, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 12-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On March 28, 2008, Plaintiff reported to the emergency room. (Tr. 403-05). Plaintiff reported that he "is very anxious" and "thinks he may be depressed." (Tr. 403). Plaintiff reported that he "is still sleeping well and eating well," but "just feels anxious." (Tr. 403). Plaintiff denied

3

experiencing suicidal or homicidal ideation and the results of a physical examination were unremarkable. (Tr. 404). The results of a mental status examination were likewise unremarkable. (Tr. 404). Plaintiff was "discharged in stable condition" after agreeing to "see community mental health" the following week. (Tr. 404).

On October 23, 2008, Plaintiff reported to the emergency room complaining of pain and tightness in his jaws. (Tr. 411-12). Plaintiff reported that he thought this might be the result of an allergic reaction after eating cashews. (Tr. 411). An examination revealed the following:

> When the patient opens his mouth he does get 2 bulges in the temporal areas. These areas are firm and nontender. When he closes his mouth they go down. They have the appearance of being mastication muscles.

(Tr. 411). Chest x-rays, as well as laboratory tests, were negative. (Tr. 411). Plaintiff was treated with "a GI cocktail and Pepcid" after which he "had near complete resolution" of his discomfort. (Tr. 411). The doctor concluded that Plaintiff was most likely experiencing reflux. (Tr. 411). Plaintiff was discharged with a prescription for Prilosec. (Tr. 411-12).

On May 8, 2009, Plaintiff participated in a consultive examination conducted by Robert Baird, Ph.D. (Tr. 419-23). When asked why he was incapable of working, Plaintiff responded "I can't remember directions" and "I can't stay focused." (Tr. 419). Plaintiff reported that he was not currently receiving mental health treatment nor taking any medications. (Tr. 419). Plaintiff also denied any current physical ailments. (Tr. 420). Plaintiff reported that he was incarcerated from 1986 to 1992 and again from 1994 until February 2008. (Tr. 420). When asked to describe his daily activities, Plaintiff reported that he "will roam around the house, watch TV or something, fix me something to eat, sometimes sit on the porch, go to the mailbox, listen to the radio

or something." (Tr. 420-21). Plaintiff also reported that he enjoys "drink[ing] beer and rid[ing] in the car." (Tr. 420). Plaintiff also reported that he is able to perform "his own food shopping, meal preparation, and household chores." (Tr. 421). The results of a mental status examination were unremarkable. (Tr. 421-22). Plaintiff was diagnosed with mood disorder, not otherwise specified, and his GAF score was rated as 45.[1] (Tr. 422).

On June 3, 2009, B. Randal Horton, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 425-38). Determining that Plaintiff suffered from a disturbance of mood and inflexible and maladaptive personality traits, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.08 (Personality Disorders) of the Listing of Impairments. (Tr. 426-34). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 435). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (Tr. 435).

Dr. Horton also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 439-41). Plaintiff's abilities were characterized as "moderately limited" in two categories. (Tr. 439-40). With respect to the remaining 18 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 439-40).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 45 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

5

On June 30, 2010, Plaintiff began counseling treatment with Network 180. (Tr. 450-54). Plaintiff reported that he was "feeling depressed, trapped, hopeless, and anxious." (Tr. 450). Plaintiff was noted to be "a poor historian who seemed to get confused easily." (Tr. 452). Plaintiff's affect was described as "flat" and his thought process was characterized as "intact but slow." (Tr. 452). Plaintiff was diagnosed with major depression and adjustment disorder and his GAF score was rated as 48. (Tr. 453). Plaintiff was subsequently prescribed Risperdal.[2] (Tr. 448-49).

On September 16, 2010, Plaintiff was examined by Dr. Elbin Orellana at Network 180. (Tr. 447). The doctor described Plaintiff's affect as "bright" and noted that Plaintiff is "more outgoing, talkative and volunteers information." (Tr. 447). Plaintiff reported that he was presently sleeping "5-7 hours every night, which for him is much better." (Tr. 447). Plaintiff's GAF score was rated as 55[2] and his medication regimen was modified. (Tr. 447).

On May 11, 2011, Plaintiff participated in a consultive examination conducted by Richard King, Ed.D. (Tr. 459-64). King noted that Plaintiff "was cooperative and able to follow directions and instructions to the testing tasks with no observed difficulty." (Tr. 459). Plaintiff participated in intelligence testing the results of which revealed that he possesses a verbal IQ of 82, a performance IQ of 78, and a full scale IQ of 78 which "places him in upper limits of the borderline...range of intelligence." (Tr. 460). The doctor reported that Plaintiff "does appear to have some ongoing generalized anxiety, as well as moderate depression of a dysthymic nature." (Tr. 461).

---

[2] Risperdal is "used to treat certain mental/mood disorders (such as schizophrenia, bipolar disorder, [and] irritability associated with autistic disorder)." *See* Risperdal, available at http://www.webmd.com/drugs/drug-9846-Risperdal+Oral.aspx?drugid=9846&drugname=Risperdal+Oral (last visited on January 23, 2014).

[2] A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

The doctor also reported that Plaintiff "is significantly limited regarding his ability for dealing with stress." (Tr. 461). Plaintiff was diagnosed with generalized anxiety disorder, dysthymic disorder (moderate), borderline intellectual functioning, and avoidant personality disorder (with schizoid traits). (Tr. 462). Plaintiff's GAF score was rated as 46. (Tr. 462). The doctor further concluded as follows:

> In summary, Kevin is an individual with limited intellectual functioning abilities. As such, he will experience a limited capability in terms of the type of employment he could successfully undertake.
>
> However, emotional dynamics, as discussed previously, will make competitive employment of even the simplest type quite problematic for Kevin. Difficulty in maintaining attendance, problems in dealing with stress, and difficulty with handling change in the work environment can be anticipated.
>
> Kevin has had significant difficulty in maintaining successful competitive employment. Part of his difficulty has been his history of legal problems. Additionally, he has never really felt or been part of the mainstream of employment. As such, he has had difficulty in imagining himself or viewing himself in a positive manner as it relates to competitive employment. Because of this and other discussed limitations, Kevin will likely have extreme difficulty in being placed in an employment setting which will allow him to be successful.

(Tr. 461-62).

Dr. King also completed an assessment of Plaintiff's ability to perform mental work related activities. (Tr. 463-64). The doctor characterized Plaintiff's ability to interact with supervisors as fair, but characterized as "poor" Plaintiff's ability to: (1) follow work rules; (2) relate to coworkers; (3) deal with work stresses; (4) function independently; and (5) maintain attention/concentration. (Tr. 463). The doctor characterized Plaintiff as possessing absolutely no ability in the following areas: (1) deal with the public; (2) use judgment; and (3) deal with work

7

stresses. (Tr. 463). The doctor characterized as "none" Plaintiff's ability to understand, remember, and carry out detailed, but not complex, job instructions. (Tr. 464). The doctor characterized as "poor" Plaintiff's ability to understand, remember, and carry out simple job instructions. (Tr. 464). The doctor characterized as "fair" Plaintiff's ability to maintain personal appearance, but characterized as "poor" Plaintiff's abilities in the following areas: (1) behave in an emotionally stable manner; (2) relate predictably in social situation; and (3) demonstrate reliability. (Tr. 464).

At the administrative hearing, Plaintiff testified that he began working a part time job following his release from prison in early 2008. (Tr. 33-34). Plaintiff testified that he was able to read, write, and perform simple mathematical calculations such as making change. (Tr. 32). Plaintiff also testified that he was not experiencing any physical impairments or limitations. (Tr. 34). Plaintiff testified that his attempts to obtain work following his release from prison were unsuccessful because he "couldn't remember more than two directions or two instructions." (Tr. 37). Plaintiff testified that he did not have any thoughts of wanting to hurt himself or others and was no longer participating in mental health counseling. (Tr. 38-39). Plaintiff reported that on a typical day he "just read[s] a book and, or look[s] at TV." (Tr. 39). Plaintiff reported that he also prepares meals, walks to the store, performs housework, and visits with his friends. (Tr. 39-41). Plaintiff reported that he enjoys fishing during the summer. (Tr. 42). Plaintiff described his mental state as "normal," but reported that occasionally other family members hear him "screaming" or "yelling out." (Tr. 44). Plaintiff testified that he engages in this behavior due to anxiety. (Tr. 44-45). Plaintiff reported that he was not presently taking any medication to treat his emotional difficulties. (Tr. 47).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from (1) mood disorder; (2) antisocial personality disorder; and (3) borderline intellectual functioning, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14-16). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work at all exertional levels subject to the following limitations: (1) he can perform only unskilled work, with an anticipation that he will be absent or tardy 6-12 times annually; and (2) he can have only occasional interaction with the general public. (Tr. 16).

The ALJ determined that Plaintiff had no past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert John Petrovich.

The vocational expert testified that there existed approximately 51,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 54-57). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

I.  **Evidence not Presented to the ALJ**

When appealing the ALJ's decision to the Appeals Council, Plaintiff submitted evidence regarding treatment he received well after the ALJ issued his decision. (Tr. 466-73). It is not clear from Plaintiff's pleadings whether he is relying on this evidence in support of his request for relief. Regardless, this Court cannot consider this evidence. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148.

To establish good cause, the claimant must "demonstrate a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir., May 7, 2012). Moreover, the "mere fact that evidence was not in existence at the time of the ALJ's decision" does not satisfy the good cause standard. The Sixth Circuit "takes a harder line on the good cause test

with respect to timing and thus requires that the claimant give a valid reason for his failure to obtain evidence prior to the hearing." *Id.* To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

Plaintiff has failed to request a remand so that this evidence can properly be considered. Likewise, Plaintiff has failed to argue that he satisfies the aforementioned standard to obtain such a remand. Plaintiff has, therefore, waived any argument that this matter be remanded for consideration of the evidence in question. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Bass*, 499 F.3d at 513 n.3 ("inadequate development" of an argument constitutes waiver of such); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived).

**II.** **The ALJ Properly Discounted Plaintiff's Subjective Allegations**

Plaintiff testified at the administrative hearing that he was unable to work due to emotional and cognitive limitations. Plaintiff asserts that he is entitled to relief because the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's

"statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t

13

is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, - - - Fed. Appx. - - -, 2013 WL 5496007 at *3 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ found Plaintiff to be less than credible. (Tr. 17-21). In making this assessment, the ALJ discussed the evidence at length and identified numerous items therein that supported his conclusion. For example, the ALJ cited to several evidentiary items that conflicted with Plaintiff's reports of cognitive and memory impairment. The ALJ noted that the results of numerous examinations were inconsistent with his allegations of disabling limitations. As the ALJ further observed, Plaintiff's history of limited and conservative treatment is inconsistent with his subjective allegations. The Court concludes, therefore, that the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

Plaintiff raises several related arguments, none of which are persuasive. First, Plaintiff takes issue with the ALJ's observation that Plaintiff was seeking disability based upon "allegations of mental retardation." (Tr. 17). Plaintiff argues that because "[n]either [he] nor his attorney alleged that he was mentally retarded," the ALJ's statement "simply reeks of bad reasoning and slipshod assembly." The Court disagrees. While Plaintiff may not have alleged that he suffered from "mental retardation," he clearly alleged at the administrative hearing that he was disabled due

14

to significant cognitive impairments. For example, Plaintiff testified that in high school he was diagnosed as "educable mentally impaired" and attended "almost all" special education classes. (Tr. 34-35). Plaintiff testified that he experiences significant difficulty remembering what he reads. (Tr. 37). Plaintiff also testified that he regrets that he does not possess "different [mental] capabilities." (Tr. 45). While the ALJ's description of Plaintiff's argument in this regard as constituting "allegations of mental retardation," appears to have been less than entirely accurate, such error was harmless and was certainly not the egregious and prejudicial error that Plaintiff alleges.

Plaintiff next asserts that he is entitled to relief because the ALJ relied on "meaningless boilerplate" in discrediting Plaintiff's subjective allegations. Specifically, Plaintiff points to the following language from the ALJ's opinion:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment.

(Tr. 17).

Plaintiff argues that the ALJ's reliance on "meaningless boilerplate clearly demonstrates that his opinion is not supported by substantial evidence." In support of this argument, Plaintiff cites to *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), in which the Seventh Circuit criticized the use of the aforementioned language as "meaningless boilerplate." *Id.* at 645. As has been recognized, however, the shortcoming with the ALJ's decision that was at issue in *Bjornson* was that the ALJ in that case "used the boilerplate as [his] only statement about the claimant's credibility." *Johnson v. Commissioner of Social Security*, 2013 WL 1703894 at *4 (W.D. Mich.,

15

Apr. 19, 2013). On the other hand, where such boilerplate is accompanied by appropriately detailed and focused analysis, consistent with the aforementioned standard, the presence of the offending boilerplate does not constitute grounds for relief. *Id.* Here, the ALJ discussed the evidence of record at length and detailed his rationale for discounting Plaintiff's subjective allegations. The Court, therefore, rejects this argument.

Finally, Plaintiff asserts that the ALJ "simply dismissed" a report submitted by Plaintiff's brother concerning Plaintiff's limitations. (Tr. 185-92). The ALJ did not "simply dismiss" this evidence, but instead specifically addressed this particular report. (Tr. 20-21). The ALJ concluded that this particular report was "not entitled to any special weight" as the report "was internally inconsistent, and is inconsistent with the objective record as a whole." As this conclusion is supported by the evidence, this argument is rejected.

**III.         The ALJ Properly Considered the Medical Evidence**

Plaintiff argues that the ALJ "committed reversible error by not properly considering and weighing the opinions of the psychologists in this case." After asserting such in his statement of errors, Plaintiff then fails to identify for the Court any specific opinion which the ALJ failed to properly weigh or assess. Plaintiff fails to articulate whether the opinions in question were articulated by a treating physician or non-treating physician. Plaintiff likewise fails to identify any controlling authority in support of this particular claim. Plaintiff seems to suggest that the ALJ failed to properly consider the opinions of Dr. King, Dr. Baird, and Dr. Orellana, but again, Plaintiff has failed to identify any specific opinion from these doctors which the ALJ failed to properly assess.

In short, Plaintiff has utterly failed to develop this argument in a way or to an extent

16

that permits this Court to perform its duty within the confines and limitations articulated above. As is well recognized, courts "do not engage in a self-directed inquiry into the facts" because "judges are not like pigs, hunting for truffles buried in" the record. *See, e.g., Zizzo v. Commissioner of Social Security*, 2013 WL 5291663 at *8 (E.D. Mich., Sept. 19, 2013); *Crosby v. Abbot*, 2013 WL 4507903 at *5 (E.D. Mich., Aug. 23, 2013). The Court concludes, therefore, that Plaintiff has waived this particular argument. Even if Plaintiff had not waived this argument, the result would be the same.

While Plaintiff has failed to identify any medical opinion which the ALJ failed to properly assess, he has cited to GAF scores reported by Plaintiff's various treaters and examiners. Plaintiff appears to take issue with the ALJ's failure to accord significance to these GAF scores. As is well recognized, however, GAF scores do not constitute medical opinions. While the ALJ must weigh and assess the medical opinions expressed by a claimant's care providers, the ALJ is not required "to put stock in a GAF score in the first place." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir., Feb. 9, 2006) (citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002)).

While Plaintiff is correct that GAF scores of 45-48 suggest the existence of limitations greater than those recognized by the ALJ, the record as a whole simply fails to support the argument that Plaintiff is impaired to an extent beyond that recognized by the ALJ. As the ALJ correctly observed, much of the evidence of record consists of evidence that Plaintiff was repeatedly and consistently assessed GAF scores of 65.[4] (Tr. 294-304, 307-18, 344-45, 353-57, 360, 372, 376, 379, 385-86, 395-96).

---

[4] A GAF score of 65 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

In sum, Plaintiff's claim fails because he has failed to identify any medical opinion to which the ALJ failed to properly evaluate.  Moreover, to the extent that Plaintiff's argument is interpreted as instead challenging the ALJ's RFC determination, the result is the same.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Date:  January 29, 2014                              /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge